HENRY MEIER, Respondent, v. THE PROCTOR & GAMBLE COMPANY, Appellant.

St. Louis Court of Appeals, November 14, 1899.

1. **Suit on Account**: TRIAL BY COURT: COURT'S FINDING SET ASIDE: RE-MITTITUR SUGGESTED. Suit on account by plaintiff for $870 for re-bates on purchases of soap. The defense was that plaintiff had violated the conditions upon which rebates were to be paid, and had therefor, forfeited all rights thereto: Held, that under the evi-dence, plaintiff was only entitled to receive the difference between the long and short prices for 463 boxes of "free soap" amounting to $151, and the court ordered judgment to be entered for that amount upon the proper remittitur being entered, and if not entered, cause reversed and remanded.

2. ———: ———: INVALIDITY OF CONTRACT: MUST BE PLEADED. If a contract is assailed for invalidity by defendant because of extrinsic matter, such matter must be pleaded and made issuable at the trial, so that the question can be considered on appeal.

3. ———: ———: ———: COURT'S FINDING, REVIEWABLE WHEN. Al-though the court as the trier of the facts, is the sole judge of the credibility of the witnesses and the weight of their testimony; yet the law is not so unreasonable where it is apparent from all the evi-dence, that such court by mistake or inadvertence overlooked con-trolling facts in its findings, found for the wrong party and against the testimony, as to require the appellate court to shut its eyes to the truth; and that it will not do, nor will it hesitate to reverse such judgment and award a new trial.

Appeal from the St. Louis City Circuit court.—*Hon. William Zachritz*, Judge.

AFFIRMED (*if remittitur be made*).

*I. H. Lionberger* for appellant.

(1) While as a rule an appellate court will not reverse the finding of a jury, or court sitting as a jury, yet where it

appears upon a review of the evidence that the verdict is "inconsistent with the admissions of the successful party" or is "strongly opposed to reasonable probability," or "seems to be the result of bias, mistake or prejudice," or is "clearly wrong," or results in "obvious injustice," etc., etc., the appellate court will not hesitate to right a wrong. Hewitt v. Doherty, 25 Mo. App. 326; Watson v. Fehlig, 59 Mo. App. 275; Holt v. Morton, 53 Mo. App. 187; Garrett v. Greenwell, 92 Mo. 120. (2) In the present case plaintiff distinctly admits that he bought goods and paid "long prices" under a rebate system; that he disregarded the "selling lists;" that after this suit was brought he attempted to compound with his customers for the purpose of earning rebates; that he offered to make an affidavit that he had not disregarded the selling lists to induce defendant to pay rebates. (3) The petition alleges that on the first day of January, 1898, the defendant owed the rebates. The suit was brought March 19, 1898. At that time defendant was not indebted, because according to the direct admissions of plaintiff, the rebates had not then been earned. The arrangements with his customers were made after the suit was brought. No authorities need be cited to show that a plaintiff's rights to recover depend upon the cause of action existing at the time he brings his suit. Weinwick v. Bender, 33 Mo. App. 80; also, 555; 8 Mo. App. 568; 11 Mo. App. 591; 17 Mo. App. 481; 48 Mo. App. 528.

*Lubke & Muench* for respondent.

(1) The verbal contract made by defendant's local agent with plaintiff's manager was binding on defendant. McNichols v. Nelson, 45 Mo. App. 446; Sparks v. Dispatch Trans. Co., 104 Mo. 539-540. (2) The defense that the contract was illegal should also have been set up affirmatively. George v. Williams, 58 Mo. App. 138; Musser v. Adler, 86

Mo. 445; Fair Association v. Delano, 108 Mo. 217. (3) When a case is tried by the court without a jury, the appellate court in examining the instructions given and refused will not do so from a technical standpoint, but only for the purpose of ascertaining whether in the disposition of the case ultimately the court took a correct view of the law applicable to the issues. Trorlicht v. Hatton, 55 Mo. App. 320; Myers v. Miller, 55 Mo. App. 338; Price v. Merritt, 55 Mo. App. 640; Benne v. Benne, 56 Mo. App. 504; Perkins v. School District, 61 Mo. App. 514; Cook v. Farrah, 105 Mo. 492.

BLAND, J.—The plaintiff, in the years 1896 and 1897 and prior thereto, was a wholesale grocer doing business in the City of St. Louis. The defendant (a corporation), was prior and during these years a manufacturer of Lenox, Ivory and other brands of soap in the City of Cincinnati, Ohio. Plaintiff for a period of 8 or 10 years prior to 1896 and during the years 1896 and 1897, was a customer of defendants. On July 1, 1896, the defendant printed and undertook to mail to each of its customers the following circular:

"Cincinnati, Ohio, July 1st, 1896.
"To.................

"If you regard the soaps of this company of sufficient value to your trade to induce you to voluntarily and continuously, without obligating yourself to sell the same at prices not less than those named in the Company's selling lists, and if you send orders with that purpose and understanding, then and not otherwise, the Company will, until further notice, sell and deliver its soaps to you at the prices named for less than five box lots in its various selling lists, and also prepay the freight.

"Payments will be required of you for the soaps so sold and delivered either in your acceptance at sixty days or in cash less two per cent if paid within seven days.

"If at the end of three months and of each like period

thereafter—that is, if on the first days of January, April, July and October, the Company is satisfied that you have sold said soaps at prices not less than those named in its various selling lists, it will make rebates in your favor according to rebate list on next page.         `

"Yours Respectfully,

"The Proctor & Gamble Company."

REBATE LIST.

Effective July 1, 1898.

Applying only to Missouri Wholesale Grocers.

| Per box. | Per box. |
|---|---|
| Already......25c | Ivory, 10 10-oz cakes............50c |
| Casco........30c | Ivory, 50 10-oz cakes............25c |
| Clean Quick ..30c | Ivory, 100 6-oz cakes... . ........30c |
| Clover........25c | Lenox .... .... ........ ....30c |
| Concord......30c | Mottled German .......... .... ..30c |
| Dover........30c | Norway .... ......:.. ........30c |
| Every Day....25c | Old Folks ...... ...... ......30c |
| Famous......30c | Oleine Oxide ...... ...... ..20c |
| Golden Bar...30c | Ole Virginny .............. .....30c |
| Good Luck....25c | Polo ...... .... ...........30c |
| Half Moon....30c | P. & G. Family ...... ........30c |
| Handy.......25c | P. & G. German...... ........25c |
| Town Talk....25c | |
| Velvet.......30c | |
| Vienna.......30c | |
| Wish Well....30c | |
| Wilton.......30c | |

Prior to and during the years of 1896 and 1897, George W. Lee was the agent of the defendant for the sale of its soaps in the city of St. Louis. From July 1, 1896, Lee took orders from plaintiff for defendant's soaps at what is designated long prices, that is at prices on which rebates were allowed, as per circular of July 1. These orders were all honored by the defendant and the soaps were billed at long prices and were received and paid for by plaintiff as billed, and rebates on all purchases, except for the quarter ending December 31,

1897, were duly allowed and paid by defendant. On November 20, 1897, plaintiff received the following letter from defendant:

"Cincinnati, Ohio, November 19th, 1897.

"Mr. Henry Meier,

"St. Louis, Mo.

"Dear Sir:—

"In order to increase the sale of Lenox Soap, we have decided to offer until the night of December 4th, '97, to the retail grocers whose places of business are in St. Louis, Mo., and East St. Louis, Illinois, one box of Lenox Soap free with each five boxes of that brand they will buy as set forth in the inclosed circular, a copy of which we are mailing to each retail grocer.

"We are sending you several of these circulars under another cover and request that you put them, together with the samples we are sending you, in the hands of your city salesmen and ask them to make every effort they can to make sales. They may sell any retailer as many boxes as he will buy, giving one free with each five, but no sales can be made on this basis to any one except retail grocers whose places of business are in the section named and no sales can be made after December 4th, '97.

"When you make delivery to retailers, please take receipts from them on the blanks which we are mailing you and after the deal is over, send them to us and we will credit your account with the free boxes delivered.

"The soap you sell on this deal must be sold for immediate and not for future delivery.

"We make this offer to the retail trade only, as it is not intended that the jobbers shall get any free soap.

"Yours very respectfully,

"The Proctor & Gamble Company,

"By H. L. French."

Afterwards defendant continued the free deal to December 11. Under the authority of this letter plaintiff gave away 463 boxes of Lenox Soap, for which he had paid the long price. Defendant refunded to him not the long, but the short price for this free soap. During the last quarter of 1897, plaintiff purchased of defendant and paid for at long prices 2,900 boxes of soap of the Ivory and Lenox brands, and rendered the following account for the rebates, including the free soap:

"St. Louis, Mo., Jan. 1, 1898.
"The Proctor & Gamble Company,

"Bought of Henry Meier, Wholesale Grocer,
"905, 907 and 909 Franklin Avenue.

"Oct. 30, 1897—To rebate on bill Oct. 20, '97.

| | | |
|---|---|---|
| 300 boxes. Lenox Soap 100-75 ea. 30..$90.00 | | |
| 50 boxes. Ivory Soap 100-6 ea. 30.... 15.00 | | |
| | | $105.00 |

"Dec. 15, '97—To rebate on bill Dec. 2, '97.

| | | |
|---|---|---|
| 500 bxs. Lenox Soap 100-75 ea. 30....$150.00 | | |
| "To rebate on bill | | |
| Dec. 7, '97, 500 bxs. Lenox Soap 100-75 ea. 30 ........... 150.00 | | |
| "To rebate on bill | | |
| Dec. 7, '97, 500 bxs. Lenox Soap 100-75 ea. 30.............. 150.00 | 450.00 |

"Dec. 27, '97,
"To rebate on bill

| | | |
|---|---|---|
| Dec. 14, '97, 350 bxs. Lenox Soap 100-75 ea. 30...... 105.00 | | |
| "To rebate on bill | | |
| Dec. 16, '97, 350 bxs. Lenox Soap, 100-75 ea. 30................ 105.00 | | |
| "Dec. 18, '97 | | |
| "To rebate on bill, | | |
| 300 bxs. Lenox Soap 100-75 ea. 30 90.00 | | |
| 50 bxs. Ivory Soap 109-6 ea. 30. 15.00 | 105.00 | $315.00 |

| | |
|---|---|
| 2,900 bxs. | $870.00 |

This account is admitted to be correct, and that the amount claimed is due, provided plaintiff is entitled to any rebates under his contract with the defendant. This account furnishes the basis of the suit. The answer is a general denial. The defense is that the plaintiff violated the conditions upon which rebates were to be paid according to the circular of July 1. Plaintiff denies that he ever received, saw or heard of the circular prior to January 1, 1898. Henry Meier, Jr., superintended and conducted the business of plaintiff, the plaintiff gave the business no personal attention, but entrusted it entirely to his son Henry Meier, Jr. The latter testified that prior to July 1, 1896, the goods purchased from defendant were billed to plaintiff at short prices, and that no rebates were paid; that about July 1, 1896, Mr. Lee, defendant's salesman, came to him and informed him that defendants had changed their method of dealing with their customers and would thereafter bill them at long prices and pay back in the way of rebates every three months the difference between the long and short prices; that he assented to this change and gave orders thereafter to Lee for soap, with the understanding that his orders would be billed to him at long prices, and that he would receive the agreed on rebates every three months on all bills purchased; that he never saw or heard of the circular of July 1, 1896; that the defendants from time to time sent out what they called selling lists—that is, prices to be charged the retailers by the jobbers, which he received; that prior to July, 1896, the defendants enforced or undertook to enforce upon the jobbers the observance of the retail prices of their goods, by imposing fines on the jobbers when they were caught selling goods below the retail price fixed by the defendant; that he supposed the rebate system was designed to fix and maintain a uniformity of prices to the retail trade, but did not understand that to earn his rebates he was bound to sell to his retail customers at the prices fixed by defendant, as Mr. Lee said nothing about it,

and as he was ignorant of the July circular; that he did sell to some of his retail customers in the city of St. Louis goods below the retail prices fixed by the defendant, but after he had learned of the contents of the circular, and after defendant refused to pay his rebates for the quarter ending December 31, 1897, he went to each one of the customers to whom he had sold below list prices, and that every one of them, when informed of the conditions of affairs, voluntarily paid him the full list prices for the goods sold under list prices. The deposition of Meier, Jr., was taken by defendant before the day of the trial and was read in rebuttal, for the purpose of contradicting his testimony as given on the trial. In his deposition he testified that he had no contract with Lee in regard to rebates, and there are other statements in the deposition not consistent with his testimony given at the trial. On being recalled he made some explanation of these contradictions.

George W. Lee, a witness for the defendant, testified that the circular of July 1, was sent to and received by Meier, Jr., and that witness and Meier read over and discussed the circular in Meier's office a few days after its date. There are some circumstances in the conduct of Lee after January 1, 1898, that seem inconsistent with the fact that he at any time saw the circular in Meier's possession or discussed it with him before January, 1898. The testimony of Meier, Jr., was that defendant fixed the selling price of their goods to the retailer, for the purpose of maintaining a uniformity of prices to the retail trade. The long price was from five to ten cents per box greater than the listed retail prices, and averaged about twenty-five cents per box more than the short price, so that all the profit realized by the jobber, if he observed list prices, was by the rebates.

The cause was tried by the court, a jury being waived. At the close of the testimony the court declared the law of the

VOL. 81 app—27

case by way of instructions; found the issues for plaintiff and defendant appealed.

The first instruction given for plaintiff is based upon the hypothesis of the agency of Lee and the making of a verbal contract with him, as testified to by Meier, Jr., and the second instruction declares in substance that if plaintiff bought and paid for 463 boxes of Lenox soap at the long price, which he gave away to his customers at the request and by the direction of the defendant, and that defendant had only paid back the short price, plaintiff was entitled to recover the difference between the long and short prices for said 463 boxes. We discover no error in these instructions.   That Lee was the agent of defendant to make sales of its goods generally to jobbers in St. Louis, is not controverted.   His authority to make sales generally clothed him presumptively with authority to bind his principal by his contracts made with customers within the scope of his employment.   Mechem on Agency, sec. 362; Austin v. Springer, 54 Mich. 343; Mabry v. Kelly-Goodfellow Shoe Co., 73 Mo. App. 1; Sparks v. Dispatch Trans. Co., 104 Mo. 539 and 540.   The testimony of Meier, Jr., furnishes some affirmative evidence that Lee as the agent of defendant did verbally contract with plaintiff about July 1, 1896, to bill goods to him in the future at long rates and pay rebates every quarter, so as to make the goods cost plaintiff in the end short rates, the same as he had theretofore paid, and that no conditions or restrictions were imposed on plaintiff as to the price at which he might sell the goods to earn the rebates.   As to the 463 boxes of Lenox Soap, the undisputed facts are that plaintiff paid the long prices for them, then gave them away at the request of defendant; that defendant credited plaintiff's account with the short price of this free soap, but refused to pay the long price.   This transaction was independent of the rebate contract, and the defendant is clearly liable to plaintiff for the difference between the long and short prices of the soap.   This evidence clearly author-

ized the second instruction. For the defendant the court in effect declared the law to be that if there was no promise on the part of the defendant to pay rebates, none could be recovered. The court refused the following instruction asked by defendant, to wit: "The court declares the law to be, that if they believe from the evidence that the demand of the plaintiff set forth in the petition grows out of and depends upon any agreement, contract or agreement between the plaintiff and defendant, designed to lessen the full and free competition in the sale of soaps, plaintiff can not recover."

As has been seen, the answer was simply a general denial. The petition is an ordinary action on account, and there is not a word in it to intimate that it is not on a valid contract. In this state of the pleadings the defense of invalidity of the contract is not available to the defendant. The rule is, as stated by Judge Sherwood, in Agr'l & Mech. Ass'n v. Delano, 108 Mo. 220, that "if the contract is to be invalidated by reason of some extrinsic matter, such matter must be pleaded in order that it may be made issuable at the trial, so that it may be considered on appeal." Musser v. Adler, 86 Mo. 445; Nat'l Lead Company v. Grote Paint Co., 80 Mo. App. 247. The validity of the contract was not made an issue by the answer, and there was nothing in the case upon which to hypothecate the instruction.

Appellant insists that the finding of the trial judge was the result of mistake or of prejudice. There is a question of veracity between Meier, Jr., and Lee, who squarely and unequivocally contradict each other on an important fact, to wit, the receipt of the July circular by Meier a few days after its issuance. The trial judge evidently credited Meier's, and discredited Lee's, otherwise his finding would have been different. It is not the province of this court to pass upon the credibility of witnesses in a case like this. Under the law the judge who sat as a jury on the trial was the sole and exclusive judge of the credibility of these two witnesses and of the

weight to be given to their testimony. But the law is not so unreasonable as to require this court in deference to the opinion of the trier of the issues to shut its eyes to a truth, when the whole of the evidence brings out that truth so clearly and convincingly that there can be no mistake about it, and where it is apparent from all the evidence that the trier or triers of the fact have by mistake or inadvertence, overlooked a controlling fact in arriving at a verdict, and found for the wrong party and against all the evidence, an appellate court will not hesitate to reverse such a judgment and award a new trial. Garrett v. Greenwell, 92 Mo. 120; Watson v. Fehlig, 59 Mo. App. 275; Holt v. Morton, 53 Mo. App. 187; Friesz v. Fallon, 24 Mo. App. 439. Setting aside the testimony of Lee and taking up that of Meier, Jr., we have this state of facts; that for eight or ten years prior to July 1, 1896, the plaintiff had been a customer of the defendant; that during this period the defendant had furnished its customers, including plaintiff, with schedules of prices to the retail trade, for the purpose of defeating competition, and that the defendant in order to maintain these prices and keep down competition among the jobbers had imposed upon and collected fines from the jobbers who were detected in selling below its retail lists. In July, 1896, according to Meier's testimony, Lee, the broker of defendant, informed him that defendant had changed its system of dealing with its customers, and would thereafter bill goods at long prices and allow rebates, so as to make the goods in the end cost the purchaser the short prices, and that these rebates would be paid quarterly. From his own lips comes the purpose of this rebate system, as he understood it. In answer to a question asked on cross-examination as to the purpose of the rebate system, his answer was: "To enable us to, or to aid us to quote the prices, and to quote the goods at those prices and get that as profit." In his deposition in answer to a question, he said: "We aimed always to sell at the schedule prices," and that he thought defendant's object in

selling at long prices and allowing rebates was to establish uniformity of price and avoid friction, so that the various retailers should not be able to get goods from a particular man cheaper than another, but that he did not know that any penalty was attached for a violation of the selling lists." The rebate allowed on Lenox soap was thirty cents per box; the selling list to the retail trade was twenty-five cents per box less than the long price, so that the jobber's profit was dependent on his receiving the rebate if he sold according to the selling list. Plaintiff observed the selling lists and received the rebates until the last quarter of 1897, during which he. sold to some customers below the selling lists as furnished him by defendant.

It is impossible to read the testimony of Meier, Jr., in the light of his knowledge of the long course of defendant's dealings with him and its other customers in reference to the observance by the latter of the retail lists, and resist the conviction that he knew the purpose defendant had in view by billing its goods at long prices and afterwards allowing rebates to him. He says in effect that the system was adopted in lieu of and to take the place of the fine system theretofore practiced for the purpose of enforcing the observance of the selling lists. He assented to this arrangement and received his rebates for a year and three quarters, and must be held to its observance. His professed ignorance of an arrangement which he had lived up to and received the benefits of for a year and a half, is not supported by his evidence when considered as a whole, and is wholly inconsistent with his conduct, and we are bound to conclude that the finding of the court was the result of mistake or from a failure on its part to duly weigh and consider the evidence. The "free soap" so-called, as we have observed, was independent of the rebate system; it was the goods of plaintiff delivered to third persons on the order of defendant on an implied promise of the latter to pay for the same. This obligation it has not fully performed. According to the

admitted facts the balance due on the "free soap," including interest to this date (Oct. 31, 1899) is $151. For this amount plaintiff is entitled to judgment, and it is ordered that unless the plaintiff remit within ten days all of the judgment but the sum of $151, the judgment will be reversed and the cause remanded, but if the remittitur be duly entered, that the judgment be affirmed. All concur.